121 P.3d 1190 (2005)
155 Wash.2d 659
In the Matter of the Recall of James E. WEST, Mayor of the City of Spokane, Appellant.
No. 77300-9.
Supreme Court of Washington, En Banc.
Argued August 24, 2005.
Decided October 26, 2005.
*1192 William Fredrick Etter, Susan Wilder Troppmann, Etter McMahon Lamberson & Clary, Carl Joseph Oreskovich, Spokane, for Appellant.
Robert Blaine Binger, Spokane County Prosecutor, Shannon M. Sullivan, Spokane, for Respondent.
Jerry J. Davis, Attorney at Law, Spokane, for Other Party (Interested Counsel).
Mark D. Hodgson, Attorney at Law, Spokane, for Amicus Curiae (Mark D. Hodgson).
Breean Lawrence Beggs, Center for Justice, Spokane, for Amicus Curiae (Neighborhood Alliance of Spokane County).
Brant Stevens, Stevens & Davis, Spokane, for Amicus Curiae (Brant Stevens).
CHAMBERS, J.
¶ 1 On August 24, 2005, we entered a brief order affirming the superior court decision authorizing a recall effort to proceed against Spokane Mayor James E. West. We now take this opportunity to explain our conclusion.
¶ 2 Shannon Sullivan, pro se, filed a recall petition against Mayor West. Fairly read, she charged, among other things, that Mayor West committed recallable misfeasance by offering an opportunity to obtain an internship with his office as part of an effort to pursue a sexual relationship with a young person he met while on-line in an internet chat room. After a contested hearing, the Spokane County Superior Court found this charge to be factually and legally sufficient. The judge also corrected the ballot synopsis to include specific details supported by documentation either attached to the original petition or subsequently submitted by Sullivan.
¶ 3 We hold that the trial judge acted within his authority when he corrected the ballot synopsis and that the allegations are factually and legally sufficient. Therefore, we affirm.

BACKGROUND
¶ 4 First, we note that the role of courts in the recall process is highly limited, and it is not for us to decide whether the alleged facts are true or not. It is the voters, not the courts, who will ultimately act as the fact finders. RCW 29A.56.140; In re Recall of Kast, 144 Wash.2d 807, 813, 31 P.3d 677 (2001). We merely function as a gatekeeper to ensure that the recall process is not used to harass public officials by subjecting them to frivolous or unsubstantiated charges. Id. Accordingly, our role is limited to ensuring that only legally and factually sufficient charges go to the voters. Id.
¶ 5 In briefest terms, and read broadly in favor of the petitioner, the surviving charge alleges that Mayor West had committed misfeasance by effectively offering to use his influence to assist a young person in applying for an internship with the mayor's office for his own personal benefit, i.e., to encourage a potential sexual relationship. Clerk's Papers (CP) at 89; Verbatim Report of Proceedings (VRP) at 44-46.[1] After considering the petition, documentation filed with the petition or submitted to the court separately, the ballot synopsis prepared by the Spokane County prosecutor's office, and *1193 argument from both sides, the judge found this charge factually and legally sufficient to go to the voters. VRP at 45. Additionally, the judge considered supplemental materials and used them to enrich the ballot synopsis with factually specific detail. VRP at 20-22; CP at 89. Mayor West sought review.

ANALYSIS
¶ 6 Most elected officials in this state may be recalled for malfeasance, misfeasance, or violation of the oath of office. CONST. art. I, §§ 33-34; RCW 29A.56.110. A superior court makes the initial determination of whether the charges are sufficient, which we review de novo. See RCW 29A.56.140; Kast, 144 Wash.2d at 813, 31 P.3d 677. Recall statutes are construed in favor of the voter. Id. at 814, 31 P.3d 677 (citing Skidmore v. Fuller, 59 Wash.2d 818, 823-24, 370 P.2d 975 (1962)). Technical violations of the governing statutes are not fatal, so long as the charges, read as a whole, give the elected official enough information to respond to the charges and the voters enough information to evaluate them. Id. Notwithstanding the petitioner's duty to plead with specificity, we will not strike recall efforts on merely technical grounds. Id. Accordingly, we may consider supporting documentation to determine whether the charges are factually sufficient. See, e.g., id.

1. CHALLENGE TO THE CORRECTION OF BALLOT SYNOPSIS
¶ 7 First, we must decide whether the trial judge committed reversible error by correcting the ballot synopsis with details supplied by Sullivan in supplemental materials. We conclude the trial judge did not overstep his authority.
¶ 8 The original ballot synopsis prepared by the prosecutor's office largely mirrored the charge as stated by Sullivan. Essentially, both charged that Mayor West had "committed acts of misfeasance in that: He solicited internships ... for his own personal uses." CP at 19; cf. CP at 6 (original petition).
¶ 9 The trial judge provided greater detail to the charges. As amended, it now reads:
Between March 8, 2005 and April 9, 2005, Mayor James E. West used his elected office for personal benefit. On March 21, 2005, he authored a letter intending to help obtain a student internship with the City of Spokane for a person he believed to be an 18-year-old high school student. During a series of internet conversations, before and after the letter, Mayor West sent a photograph of himself to the person, raised issues of sex, discussed dating, and urged the person to keep Mayor West's identity a secret. Mayor West admits these conversations. Offering to help obtain a student internship with the City of Spokane under these circumstances was an improper exercise of an official duty.
CP at 89. Mayor West asserts that the trial judge exceeded his authority by correcting the ballot synopsis in this way.
¶ 10 But the legislature has vested the responsibility for this decision in the superior court. RCW 29A.56.140 ("The superior court shall correct any ballot synopsis it deems inadequate. Any decision regarding the ballot synopsis by the superior court is final."). The trial judge deemed the ballot synopsis inadequate because it failed to identify dates and other pertinent details and corrected the ballot synopsis to include this information. Fairly read, all the trial judge did was flesh out the factual details amply supported by supplemental materials. This fits comfortably within the common understanding of "correct," "to make or set right: remove the faults or errors from: AMEND." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 511 (1993).[2]
¶ 11 We hold the trial judge acted within his authority by correcting the synopsis as he did.

*1194 2. FACTUAL SUFFICIENCY
¶ 12 We now turn to whether the charge was factually sufficient. We hold that it was.
¶ 13 Charges are factually sufficient to justify recall when, "taken as a whole they... state sufficient facts to identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance." Chandler v. Otto, 103 Wash.2d 268, 274, 693 P.2d 71 (1984). Voters may draw reasonable inference from the facts; the fact that conclusions have been drawn by the petitioner is not fatal to the sufficiency of the allegations. Id.
¶ 14 We first consider Mayor West's contention that the charges are insufficient because they lack sufficient detail. We find that the petition as a whole, as aptly demonstrated by the corrected synopsis, "describe[s] the charges `with sufficient precision and detail to enable the electorate and the challenged official to make informed decisions in the recall process.'" In re Recall of Zufelt, 112 Wash.2d 906, 911, 774 P.2d 1223 (1989) (quoting Jenkins v. Stables, 110 Wash.2d 305, 307, 751 P.2d 1187 (1988)).
¶ 15 Mayor West next argues that the court erred by going beyond the "face" of the petition and considering attached documents. However, this court has already decided that attached documents may be considered and Mayor West gives us no reason to revisit this practice. See, e.g., Kast, 144 Wash.2d at 814, 31 P.3d 677. We now hold that an alleged factual insufficiency in a recall petition may be, in the judge's sound discretion, cured by consideration of supplemental documentation, so long as the elected official has sufficient actual notice to meaningfully respond to the factual allegations supported by the proffered supplementation. See Kast, 144 Wash.2d at 814, 31 P.3d 677; In re Recall of Anderson, 131 Wash.2d 92, 95, 929 P.2d 410 (1997) ("the court ... may go outside the petition to determine whether there is a factual basis for the charge."). However, we caution that petitioners have the duty to "reasonably identify" the relevant facts contained in the supplemental materials and risk dismissal if courts cannot readily ascertain the factual basis of the charge.
¶ 16 Mayor West also argues that Sullivan does not have adequate knowledge of the facts necessary to support recall. See RCW 29A.56.110. Mayor West analogizes the unnamed sources in the submitted newspaper articles to the unknown sources found to be inadequate in In re Recall of Beasley, 128 Wash.2d 419, 428, 908 P.2d 878 (1996). But Beasley is not on point. In Beasley, the petitioner was "unsure" of the source of his allegation. In this case, the factual basis for the allegations is drawn almost entirely from transcripts of internet chats published in the newspapers. Sullivan and the community are aware of the source of the allegations and far better able to judge their credibility.[3]
¶ 17 We conclude the charge is factually sufficient. Read broadly, as a whole, and in favor of the voter, we find it alleges that an elected official offered the assistance of his office in obtaining an internship to promote a potential sexual relationship. CP at 74-76, 89. This is factually sufficient to raise an inference that Mayor West committed "wrongful conduct that affects ... the performance of official duty [or] the performance of a duty in an improper manner." RCW 29A.56.110(1)(a); cf. BLACK'S LAW DICTIONARY 1021 (8th ed.2004) (defining "misfeasance" as, "A lawful act performed in a wrongful manner.").

3. LEGAL SUFFICIENCY
¶ 18 To be legally sufficient under these circumstances, the charge must specifically *1195 allege substantial conduct clearly amounting to misfeasance. Kast, 144 Wash.2d at 815, 31 P.3d 677.
¶ 19 Mayor West argues, among other things, that the charge is not legally sufficient because sending an e-mail to a person interested in an internship is not conduct that affects or interferes with the performance of his official duties. But this is an overly narrow articulation of the charge brought in the petition. The charge raises the inference that Mayor West sought to capitalize on his elected office and influence in order to pursue a sexual relationship with a young person. This is clearly "wrongful conduct that affects ... the performance of official duty [or] the performance of a duty in an improper manner." RCW 29A.56.110(1)(a).
¶ 20 We are not unmindful of the fact that the original petition did not specifically articulate this charge in this way and that recourse to the attached documentation was required. However, we find that this will not defeat an otherwise adequate charge if the "gist" of the original charge is sufficiently similar to the charge as stated in the amended ballot synopsis. In re Recall of Lee, 122 Wash.2d 613, 618, 859 P.2d 1244 (1993). The petition read as a whole gave fair notice of the actual charges, and Sullivan unequivocally adopted the trial court's articulation of the charge at oral argument before us. We find that the charge is legally sufficient.[4]

CONCLUSION
¶ 21 This court will not allow merely technical violations of the statutes to block a factually and legally sufficient recall petition from going to the voters. Because the errors claimed by Mayor West are, at most, only technical, we affirm.
We, concur, ALEXANDER, C.J., C. JOHNSON, BRIDGE, OWENS, FAIRHURST, JJ.
MADSEN, J. (concurring).
¶ 22 I agree with the majority that the trial court was entitled to consider the supplemental material presented by Ms. Sullivan at the hearing, along with the petition and its attachments. I also agree with the majority's result. In my view, "the acts stated in the charge satisfy the criteria for which a recall petition may be filed." RCW 29A.56.140. I write separately to make clear that the petition and the supplemental documents must allege a charge that is factually and legally sufficient in order to permit a recall petition to go forward. Although the trial court has the authority to "correct" the ballot synopsis to adequately reflect the charge, regardless of whether the "correction" pertains to factual or legal matters, the court cannot "correct" the charge by correcting the ballot synopsis. Thus, if the charge meets the statutory requirements then the trial court has the authority to ensure that the ballot synopsis correctly sets forth the allegations that support the recall charge. If, conversely, the charge is legally and/or factually insufficient then the recall petition must be dismissed and no "correction" by the trial court to the ballot synopsis can save it.
FAIRHURST, J., and ALEXANDER, C.J., concur.
J.M. JOHNSON, J. (concurring).
¶ 23 Constitutional rights do not submit to red tape. Accordingly, I join the opinion of the court but write separately to underscore the nature and importance of the constitutional right to recall under article I, section 33 of the Washington Constitution. The adjacent constitutional provision authorizes statutes only to "facilitate its operation." CONST. art. I, § 34. Thus, any laws affecting recall must be construed by courts to assure the free exercise of this right. That is the (belated) result here,[1] so I concur.
*1196 ¶ 24 The right to recall finds its source in the sovereignty of the people, first expressed at the beginning of our constitution in article I, acknowledging the source of all political power:
All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights.
CONST. art. I, § 1. The foregoing section states, "the fundamental premise as to the source of political power in Washington." Wash. State Farm Bureau Fed'n v. Reed, 154 Wash.2d 668, 684-85, 115 P.3d 301 (2005) (J.M. Johnson, J., dissenting). It therefore serves as the lens through which we view all other article I rights. This necessarily includes the express provision of a right to recall elected officials which was ratified in 1912. The Eighth Amendment, now article I, section 33, in pertinent part provides:
Every elective public officer of the state of Washington expect [except] judges of courts of record is subject to recall and discharge by the legal voters of the state, or of the political subdivision of the state, from which he was elected whenever a petition demanding his recall, reciting that such officer has committed some act or acts of malfeasance or misfeasance while in office, or who has violated his oath of office, stating the matters complained of, signed by the percentages of the qualified electors thereof....
The right of recall is an additional remedy provided by the people to further control public officers they have elected. Gibson v. Campbell, 136 Wash. 467, 479, 241 P. 21 (1925) (Holcomb, J., dissenting). It serves as a safeguard against abuse of power by elected officials, further ensuring their accountability to the people.
¶ 25 As an article I right in the Declaration of Rights of our state's constitution, the right to recall is an individual right on par with the right to petition and assemble (section 4) and freedom of speech (section 5) of the same article I. It is well established that none of these other article I rights are subject to prior restraint by government or by government officials, and this same protection must be given the right to recall.[2]
¶ 26 In my view, this means that prior restraints upon the exercise of the right to recall are presumptively unconstitutional. Since statutes of the legislature relating to recall are constitutionally allowed only to "facilitate its operation," such statutes cannot be construed to prohibit or impede exercise of this right.[3] Delay  even in the courts  could work such an impediment.
¶ 27 As article I, section 34 provides, in pertinent part:
The legislature shall pass the necessary laws to carry out the provisions of section thirty-three (33) of this article, and to facilitate *1197 its operation and effect without delay....
Any legislation at cross-purposes with the facilitation of the right would be constitutionally void. The corollary is that a court should construe and implement any statutory scheme to avoid this effect.
¶ 28 In this respect, section 34's provision requiring legislation to "facilitate" the right to recall is similar to article II's provision requiring legislation to "facilitate" the respective rights of initiative and referendum. The article II provision was included through the Seventh Amendment, which established these rights of initiative and referendum. In the initiative context we have noted that "[t]he principle that statutes are to be construed to `facilitate,' rather than frustrate, the right of initiative derives from the plain language of the Washington Constitution." Coppernoll v. Reed, 155 Wash.2d 290, 297 n. 4, 119 P.3d 318 (2005).
¶ 29 Although article II, section 1(d) describes the section as "self-executing," it shares article I, section 34's use of the limiting term "facilitate." It is also important that the right to recall was adopted by the people at the same election in 1912. Accordingly, the exercise of that right demands as much respect as the rights of initiative and referendum, being "nearly as old as our constitution itself, deeply engrained in our state's history, and widely revered as a powerful check and balance on the other branches of government." Coppernoll, 155 Wash.2d 290, 296-97, 119 P.3d 318.
¶ 30 From this understanding that legislation may be passed only to "facilitate" the exercise of the right to recall, it follows that "the judiciary must exercise restraint in interfering with the elective process which is reserved to the people in the state constitution." McCormick v. Okanogan County, 90 Wash.2d 71, 75, 578 P.2d 1303 (1978). Such restraint involves recognition that the charges raised in the recall statement do not require the particularity of criminal charges or a criminal indictment. The question of whether sufficient cause exists for removal involves a political proceeding, with the question to be ultimately decided by the people. "The same exactitude, or any approach thereto, is never required in non-judicial that is generally required in judicial procedure." Gibson, 136 Wash. at 479, 241 P. 21 (Holcomb, J., dissenting). "[A]s against the people, a public officer, their servant, has no rights whatever, so far as his possession of the office is concerned, which may not be ignored by the people speaking in a lawful manner." Cudihee v. Phelps, 76 Wash. 314, 330, 136 P. 367 (1913). In the exercise of the right of recall, "there is not involved any question of due process of law guaranteed by the state or Federal constitution cognizable by the courts." Id. at 331, 136 P. 367. Accordingly, "[a] person need not be guilty or even probably guilty of any penal offense to be amenable to recall under this political method of recall." Gibson, 136 Wash. at 479, 241 P. 21 (Holcomb, J., dissenting).[4]
¶ 31 It also follows that, as with initiative or referendum statutes, interpretation of statutes preserving the people's right to recall must be liberally construed. See Gibson, 136 Wash. at 474-75, 241 P. 21 ("in carrying out the salutary purposes intended in the adoption of the recall, the provisions of the statute should be liberally construed."); In re Estate of Thompson, 103 Wash.2d 292, 294-95, 692 P.2d 807 (1984) (noting this court has consistently applied the rule that provisions preserving the right of initiative to the people will be liberally construed to facilitate that right). "Recall statutes are construed in favor of the voter." Majority at 1193 (citing In re Recall of Kast, 144 Wash.2d 807, 814, 31 P.3d 677 (2001)). Only by remembering the underlying purpose of recall statutes in facilitating the exercise of that right will the *1198 judiciary be able to vigilantly safeguard this important right of the people.
¶ 32 Accordingly, I concur in today's opinion upholding this recall, while reminding courts in the future their role should be limited and quickly concluded  i.e., exercised with clear understanding that the constitutional right of recall is only to be facilitated.
SANDERS, J. (dissenting).
¶ 33 Spokane Mayor James West demonstrates the recall charge filed by Shannon Sullivan is legally and factually insufficient. In this State, and under our laws and constitution, public office holders have the right to conduct their private affairs in a lawful manner without fear of recall. But our majority misconstrues the statute governing recall elections, ignores controlling precedent, and embellishes the evidence offered by Ms. Sullivan. I therefore disagree with both the majority's approach and its conclusions and would protect the mayor's right to a private life.

I. BACKGROUND

A. Washington Recall Provisions
¶ 34 Citizens of Washington have a constitutional right to remove elected public officials prior to the expiration of their terms through a recall election. Wash. Const. art. I, §§ 33-34. But unlike constitutional recall provisions in most other states,[1] ours requires specific cause be shown before recall is allowed. Chandler v. Otto, 103 Wash.2d 268, 270, 693 P.2d 71 (1984). We are also in the minority of states constitutionally requiring a recall petition to allege acts of malfeasance, misfeasance, or a violation of the oath of office. Id.
¶ 35 Concerned with recall elections based on charges void of factual support and other abuses of the process, the legislature amended the recall statute in 1976 to require the charge "`giv[e] a detailed description including the approximate date, location, and nature of each act complained of.'" Id. at 272, 693 P.2d 71 (quoting former RCW 29.82.010 (1965)); see also RCW 29A.56.110. The recall statute was amended again in 1984 to require a petitioner to verify under oath knowledge of the facts on which the recall charge is based. Id. at 272, 693 P.2d 71; see also RCW 29A.56.110. The 1984 amendments also defined misfeasance as "`any wrongful conduct that affects, interrupts, or interferes with the performance of an official duty"' or "`the performance of a duty in an improper manner."' Id. at 272, 693 P.2d 71 (quoting Laws of 1984, ch. 170, § 1); see also RCW 29A.56.110(1).
¶ 36 These modifications indicate legislative intent to protect officials from petitions based on "frivolous charges or mere insinuation," and require a recall petition to satisfy both legal and factual sufficiency requirements. Chandler, 103 Wash.2d at 274, 693 P.2d 71. Further, by restricting the definition of misfeasance to wrongful conduct affecting the duties of the officer, RCW 29A.56.110 precludes recall charges based on private conduct unrelated to those duties.

B. The Sullivan Petition
¶ 37 The petition filed by Ms. Sullivan alleged in the relevant part:
By Mayor West's own admission, on 11/30/04, 12/31/04, 02/19/05, 2/26/05, 3/8/05, 3/9/05, 3/19/05, and 3/29/05 he abused his computer privileges on a City owned computer to interact with young men on a gay web site. He also admitted soliciting internships for young men for his own personal uses.
Mayor West has been under the spot light on inappropriate behavior for quite a few years. He is hurting the reputation of our fine city. I plead with the courts to allow me to start a petition to remove Mayor Jim West from his post. I have attached several documents stating more allegations.
Clerk's Papers (CP) at 6.
¶ 38 The petition included three attachments: (1) a copy of the Oath of Office signed by the Mayor on December 23, 2003; *1199 (2) a four-paragraph excerpt, ostensibly from a Spokane Spokesman-Review article; and (3) a Spokane Spokesman-Review article dated May 5, 2005. CP at 8-15. At the sufficiency hearing, Ms. Sullivan submitted an additional seven unsworn documents into the record.[2]
¶ 39 The question before us is whether the charge alleging Mayor West solicited internships for young men "for his own personal uses" satisfies the factual and legal sufficiency requirements.

II. THE CHARGE IS FACTUALLY INSUFFICIENT
¶ 40 The factual sufficiency requirement serves to "ensure that charges, `although adequate on their face, do not constitute grounds for recall unless supported by identifiable facts.'" In re Recall of Wade, 115 Wash.2d 544, 549, 799 P.2d 1179 (1990) (quoting Teaford v. Howard, 104 Wash.2d 580, 584, 707 P.2d 1327 (1985)). Factual sufficiency means the facts included in the charge must establish a prima facie case of misfeasance, malfeasance, or violation of the oath of office (quantitative prong). Cole v. Webster, 103 Wash.2d 280, 285, 692 P.2d 799 (1984). The facts must be stated in "concise language", and "give a detailed description including the approximate date, location, and nature of each act complained of" (qualitative prong). RCW 29A.56.110.
¶ 41 On its face, the charge Mayor West "admitted soliciting internships for young men for his own personal uses" is insufficient. CP at 6. It provides no description of the nature or method of the alleged solicitation and fails to identify its recipients. Id. The alleged "soliciting internships for young men for his own personal uses" is vague, ambiguous, grammatically incorrect, and void of factual specificity required by RCW 29A.56.110.
¶ 42 The next question is whether Ms. Sullivan may rely on the attachments to her petition. As a general proposition, the answer is yes. See, e.g., In re Recall of Kast, 144 Wash.2d 807, 814, 31 P.3d 677 (2001). However, subsequent to Kast, we have clarified the extent of that prerogative in In re Recall of Wasson, 149 Wash.2d 787, 72 P.3d 170 (2003).
¶ 43 Much like this case, Wasson involved a petitioner who sought to support his petition with attachments containing a significant amount of irrelevant information. Holding such attempts violated the specificity (qualitative) prong of factual sufficiency, we stated a petitioner choosing to refer to attached information must "reasonably identify" the relevant facts in the supplemental materials and that "[a] general reference to sources containing relevant and irrelevant information is insufficient." Wasson, 149 Wash.2d at 792, 72 P.3d 170.
¶ 44 Wasson is controlling precedent the majority chooses to ignore. Regarding the attachments, the petition simply states, "I have attached several documents stating more allegations." CP at 6. If this constitutes "reasonable identification" of the relevant facts contained in the attachments, then what doesn't?
¶ 45 Even if we dispense with the qualitative prong of analysis, and consider the attachments, the charge still fails the factual sufficiency test.
¶ 46 The majority wants us to draw an inference that the invitation to apply for an internship was made to "promote a potential sexual relationship." Majority at 1194. We cannot draw such an inference. The only concrete piece of evidence Ms. Sullivan has submitted is the March 21, 2005, e-mail inviting *1200 Moto-Brock to apply for an internship.[3] Nor do the remaining attachments which mention the internship establish any connection between the invitation to apply and sex. Nothing in the attachments links Mayor West's private affairs with the discharge of his duties. Nor does the record state the mayor has the authority to select interns at all. When the majority states the mayor offered "an opportunity to obtain an internship with his office as part of an effort to pursue a sexual relationship" it is not referencing the record but rather its own wild speculation. Majority at 1192.
¶ 47 Because the facts alleged in the petition, even when considered alongside those alleged in the attachments, do not constitute a prima facie case of misfeasance, the charge is factually insufficient.

III. THE CHARGE IS LEGALLY INSUFFICIENT
¶ 48 In order to be legally sufficient, "the petition must state with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office." Chandler, 103 Wash.2d at 274, 693 P.2d 71. This case involves a single allegation of misfeasance. The statute defines misfeasance as "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty" or "the performance of a duty in an improper manner." RCW 29A.56.110(1)(a). To present a prima facie case of misfeasance, the petition must "allege [the elected official's] abuse of discretion" or "identify a standard, law or rule which would make his conduct wrongful, improper or unlawful." In re Recall of Zufelt, 112 Wash.2d 906, 914, 774 P.2d 1223 (1989).
¶ 49 Because the charge and the attachments do not identify any standard, law or rule allegedly violated by Mayor West, the legal sufficiency of the charge must be based on abuse of discretion.[4]Id.
¶ 50 Without citing to the record, the majority asserts that the charge "raises the inference" Mayor West used his office to pursue a sexual relationship with a young person. Majority at 1195. As discussed above, this allegation does not appear in the charge or the attachments. There is no evidence the social interactions between the Mayor and the Spokesman-Review expert took place during business hours, involved city computers, or otherwise affected Mayor West's official duties. The charge provides none of the specifics required by RCW 29A.56.110 and fails to "provide a concise statement of the legal violations and a detailed description of the acts to inform the electorate and the official being charged." Wasson, 149 Wash.2d at 792, 72 P.3d 170.
¶ 51 Because the charge and the attachments do not identify any standard, law, or rule violated by Mayor West and because they do not state with specificity substantial conduct amounting to abuse of discretion, the charge is legally insufficient.
¶ 52 The majority attempts to circumvent this deficiency by arguing Ms. Sullivan "adopted" the amended ballot synopsis prepared by the trial court at oral argument. No explanations or citations are provided to illuminate the significance of this alleged adoption. To the extent the majority argues factual and legal sufficiency infirmities in the charge and the accompanying attachments can be rectified by the ballot synopsis, such determination is unsupported by the statute.

IV. CONCLUSION
¶ 53 The charge suffers from both technical and substantive infirmities. No evidence has been presented from which to infer Mayor *1201 or West committed acts of misfeasance as defined by RCW 29A.56.110. The majority's analysis is high on innuendo and generalization and short on substantive discussion of the actual contents of the charge and the attachments. I would reverse the trial court and hold the charge is factually and legally insufficient.[5]
¶ 54 Accordingly, I dissent.
NOTES
[1] Additionally, the petition alleged that Mayor West should be recalled for improper use of city computers and hurting the reputation of the city. Sullivan has not challenged the trial judge's dismissal of these charges.
[2] We recognize that there may be some trial court revisions to charges that, rightly understood, are not "corrections" as meant by the statute. This case gives us no occasion to consider the question, as the changes do not change the "gist" of the charge. Cf. In re Recall of Lee, 122 Wash.2d 613, 618, 859 P.2d 1244 (1993).
[3] Much of the factual basis for this claim appears in newspaper articles. Nothing in this opinion should be taken to establish that media articles, categorically, may form a sufficient basis for the personal knowledge of facts required by law. See RCW 29A.56.110; cf. Zufelt, 112 Wash.2d at 908, 774 P.2d 1223. However, here, the news articles included lengthy transcripts of electronic conversations that form the basis of the charge. Additionally, we note that after a contested hearing, the trial judge essentially concluded that Mayor West had admitted the conversations; a finding Mayor West has not challenged before us, though he does challenge the transcript's completeness and the implications to be drawn from those conversations. CP at 89 ("Mayor West admits these conversations.").
[4] Mayor West argues that although the trial court has the authority to correct the factual adequacy of the synopsis, it did not have the authority to correct any legal insufficiency in the petition through correcting the ballot synopsis. Since we find that the charge was legally sufficient, we need not reach this issue. We also deny both Mayor West's RAP 9.11 motion to supplement on the grounds that the materials are not helpful to our consideration and Sullivan's RAP 18.9 motion for sanctions for filing the formal motion to accept the supplementation in an untimely manner.
[1] I strongly agreed with the procedure followed in this court, entering an order allowing the recall immediately the day of argument to minimize delay.
[2] In the speech context, we have noted that prior restraints are official restrictions that prohibit future speech. State v. Bassett, 128 Wash.2d 612, 615, 911 P.2d 385 (1996); City of Seattle v. Bittner, 81 Wash.2d 747, 756, 505 P.2d 126 (1973). Prior restraints are presumptively unconstitutional. State v. Bassett, 128 Wash.2d at 615, 911 P.2d 385; Soundgarden v. Eikenberry, 123 Wash.2d 750, 765, 871 P.2d 1050 (1994). However, not all prior restraints are prohibited. Id. (citing State v. Coe, 101 Wash.2d 364, 372-73, 679 P.2d 353 (1984)). E.g., a regulation may not rise to the level of a prior restraint if it is merely a valid time, place, or manner restriction on the exercise of protected speech. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 126, 937 P.2d 154 (1997); Coe, 101 Wash.2d at 373, 679 P.2d 353.

It is also worth emphasizing that rights of the people guaranteed through other articles of our constitution should be protected from prior restraints. See, e.g., Wash. State Farm Bureau Fed'n, 154 Wash.2d at 684, 115 P.3d 301 (J.M. Johnson, J., dissenting) (maintaining that the secretary of state and the legislature may not act in prior restraint of the right of referendum).
[3] That the people contemplated the legislature enacting legislation to ensure the facilitation of this right is obvious, as discussed supra. However, such legislation cannot prohibit future exercise of the right and any statutory provisions relating to recall that would purportedly be analogous to time, place, or manner restrictions should be carefully scrutinized in order that the people's right may be maintained and protected.
[4] Further, because "the recall was adopted by the people of the state for the express purpose of allowing them to remove their officials at will, and for any cause which was by them deemed sufficient," the ascertainment of the particular motives of any recall petition's proponents is beyond proper judicial inquiry. Gibson, 136 Wash. at 474, 241 P. 21. Rather, the existence or legitimacy of any such motives are themselves triable to the people, and "[c]ourts would be treading upon dangerous ground if they should assume to make the exercise by the citizens of rights granted by the constitution and laws dependent upon considerations of motive." Roberts v. Millikin, 200 Wash. 60, 68, 93 P.2d 393 (1939).
[1] See Cal. Const. art. II, §§ 13-19; Colo. Const. art. XXI, §§ 1-4; Idaho Const. art. VI, § 6; La. Const. art. X, § 26; Mich. Const. art. II, § 8; Nev. Const. art. II, § 9; N.J. Const. art. I, ¶ 2; N.D. Const. art. III, §§ 1-10; Or. Const. art. II, § 18; Wis. Const. art. XIII, § 12.
[2] (1) City of Spokane Personnel Policy, Electronic Communications, HR-52; (2) City of Spokane Personnel Policy, Email, HR-55; (3) a Spokane Spokesman-Review article by Mike Prager dated May 9, 2005, along with an affidavit signed by Cherie Rodgers; (4) an e-mail and AOL instant messenging exchange between Mayor West and Moto-Brock obtained by the Spokane Spokesman-Review; (5) an e-mail from Mayor West to Moto-Brock dated March 21, 2005; (6) a Spokane Spokesman-Review article by Bill Morlin dated May 5, 2005; and (7) an e-mail exchange between Mayor West and Brock Stewart obtained by the Spokane Spokesman-Review, dated March 8, 2005 through March 21, 2005. CP at 58-84. "Moto-Brock" was an alias used by a forensic computer expert hired by the Spokane Spokesman-Review to verify Mayor West's on-line presence. CP at 81.
[3] The e-mail stated:

Dear [Moto-Brock]:
A friend of mine has asked if I would consider you for an internship in the Mayor's office. He informs me that you are a high school senior at Ferris high school in Spokane. He also says that you are an excellent student and a member of the football team.
If you are interested please contact Melissa Murphy in my office at 625-6250. She will have you fill out an application which will need your parent's and school official's approval. We look forward to hearing from you.
CP at 78.
[4] Mayor West's use of his office e-mail account to invite a student to apply for an internship with his office does not violate either of the city of Spokane's policies attached by Ms. Sullivan because the e-mail did not concern personal relationships, dating, or sex. See CP at 58-67.
[5] I agree with the majority's resolution of Mayor West's challenge to the trial court's power to correct the ballot synopsis. The plain language of RCW 29A.56.140 precludes review of the trial court in this regard. I also agree with the majority denying both Mayor West's RAP 9.11 motion and Ms. Sullivan's motion for sanctions.