**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 28, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 28, 2022

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF:<br><br>THE RECALL OF JAY INSLEE,<br>Governor of the State of Washington.<br><br>Respondent. | NO. 99948-1<br><br>EN BANC<br><br>Filed: <u>April 28, 2022</u> |

STEPHENS, J.—C Davis seeks to recall Governor Jay Inslee. Davis filed five recall charges alleging that Governor Inslee violated the separation of powers, infringed on a number of constitutional rights, and improperly exercised emergency powers when issuing proclamations in response to the COVID-19 pandemic. In order to be placed on the ballot, a recall charge must be legally and factually sufficient to demonstrate an elected official's malfeasance, misfeasance, or violation of the oath of office. We hold that the charges put forth by Davis are not legally or factually sufficient.

*In re Recall of Jay Inslee*, No. 99948-1

FACTS AND PROCEDURAL HISTORY

In January 2020, the first case of COVID-19 was identified in Washington. The first COVID-19 related deaths followed closely thereafter. As the virus spread across the country and the globe, the United States Department of Health and Human Services and the World Health Organization declared the COVID-19 outbreak a public health emergency. Governor Inslee, pursuant to the discretionary authority provided by the legislature, proclaimed a state of emergency in Washington on February 29, 2020. RCW 43.06.010(12); LAWS OF 2019, ch. 472, § 1 ("[T]he governor has broad authority to proclaim a state of emergency . . . and to exercise emergency powers during the emergency."). Governor Inslee has continually exercised his discretionary authority to issue further emergency proclamations related to the pandemic.

Davis alleges the governor exceeded his authority under law in responding to the COVID-19 pandemic, thereby committing misfeasance and violating his oath of

*In re Recall of Jay Inslee*, No. 99948-1

office.  Six specific gubernatorial proclamations are relevant here: 20-05,[1] 20-06,[2] 20-07,[3] 20-11,[4] 20-19,[5] and 20-28.[6]

On February 29, 2020, Governor Inslee issued the first COVID-19 emergency proclamation, Proclamation 20-05, declaring a state of emergency and authorizing state agencies and departments to utilize state resources in an effort to respond to and recover from the outbreak.  Soon after, the governor issued Proclamation 20-06, which extended Proclamation 20-05 and created several new restrictions related to the operation of nursing homes and assisted living facilities.  These restrictions were intended to remain in effect until April 2020.  Proclamation 20-06 identified potential criminal penalties for those in violation of this order.

Soon after, Governor Inslee issued Proclamation 20-07, which extended Proclamations 20-05 and 20-06 and imposed restrictions on social, spiritual, and recreational gatherings of more than 250 people in King, Pierce, and Snohomish

---

[1] Proclamation by Governor Jay Inslee, No. 20-05 (Wash. Feb. 29, 2020), https://www.governor.wa.gov/sites/default/files/20-05%20Coronavirus%20%28final%29.pdf?utm_medium=email&utm_source=govdelivery [https://perma .cc/TAF6-QNG B].

[2] Proclamation by Governor Jay Inslee, No. 20-06 (Wash. Mar. 10, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-06%20Coronavirus%20Gatherings%20Amendment%20%28tmp %29.pdf [https://perma.cc/WT7M-5ZXS].

[3] Proclamation by Governor Jay Inslee, No. 20-07 (Wash. Mar. 11, 2020), https://www.governor.wa.gov/sites/ defa ult/files/20-07%20Coronavirus%20%28tm p%29 .pdf [https://perma .cc/63SJ-T8KL].

[4] Proclamation by Governor Jay Inslee, No. 20-11 (Wash. Mar. 13, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-11%20Coronavirus%20Gatherings%20Amendment%20%28tmp %29.pdf [https://perma.cc/TS96-QPNZ].

[5] Proclamation by Governor Jay Inslee, No. 20-19 (Wash. Mar. 18, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-19%20-%20COVID-19%20Moratorium%20on%20Evictions %20%28tmp%29.pdf [https://perma.cc/BBN9-QEM8].

[6] Proclamation by Governor Jay Inslee, No. 20-28 (Wash. Mar. 24, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-28%20-%20COVID-19%20Open%20Govt%20Laws%20Waivers %20%28tmp%291.pdf [https://perma.cc/4SQV-VA8Q].

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

counties until March 31, 2020. This proclamation also advised of potential criminal penalties for violations. Proclamation 20-11 soon expanded the restrictions on gatherings of 250 people or more to all counties in the state of Washington.

Governor Inslee later issued Proclamation 20-19, which temporarily barred residential landlords from (1) serving a notice of unlawful detainer for default payment of rent, (2) issuing a 20-day notice for unlawful detainer, or (3) initiating judicial action seeking a writ of restitution involving a dwelling unit. The proclamation also prohibited local law enforcement from serving or otherwise acting on eviction orders issued solely for default payment or rent. Landlords and law enforcement officers were still allowed to enforce evictions if the action was necessary to ensure the health and safety of the tenant or other individuals, or if the eviction was issued for waste, nuisance, or commission of a crime on the premises.

In the final proclamation identified by Davis, Proclamation 20-28, Governor Inslee temporarily suspended the portions of the Open Public Meetings Act of 1971 and the Public Records Act that require in-person meetings. Ch. 42.30 RCW; ch. 42.56 RCW. The proclamation also prohibited public agencies from conducting meetings in person and instead required public agencies to provide options for the public to attend the proceedings through, at minimum, telephonic access.

In May 2021, C Davis and four other proponents filed a recall petition against Governor Inslee, alleging that the various emergency proclamations violate the

*In re Recall of Jay Inslee*, No. 99948-1

proponents' constitutional rights and therefore constitute misfeasance and a violation of the governor's oath of office. The Washington State Attorney General's Office prepared a ballot synopsis of these charges. The ballot synopsis reads:

> The charges that Jay Inslee, as Governor of Washington committed misfeasance, malfeasance, and/or violated his oath of office allege:
>
> 1. Governor Inslee violated constitutional religious freedom guarantees by issuing Proclamation 20-25, "Stay Home – Stay Healthy," which prohibited gatherings in Washington in response to the COVID-19 pandemic.
> 2. Governor Inslee violated the constitutional separation of powers by issuing Proclamation 20-19, "Evictions," which prohibited landlords from initiating judicial actions for writs of restitution involving dwellings for failure of tenants to timely pay rent.
> 3. Governor Inslee violated constitutional rights to petition the government for redress of grievances and to peaceably assemble by issuing Proclamation 20-28, which prohibited public agencies from conducting in-person meetings and suspended certain provisions of the Open Public Meetings Act.
> 4. Governor Inslee violated the constitutional right to peaceably assemble by limiting the size of in-person gatherings through Proclamations 20-05, 20-06, 20-07, and 20-11, and subsequent proclamations.
> 5. Governor Inslee issued emergency proclamations related to the COVID-19 pandemic without finding that a public disorder, disaster, energy emergency, or riot existed in Washington State due to COVID-19.

Clerk's Papers (CP) at 68.

In support of these charges, one of the proponents alleges he was denied access to his local city council meeting for refusing to wear a facial covering and was unable to attend those meetings online due to technological difficulties. Another proponent states she was repeatedly denied permits to hold rallies on the Capitol Campus due to the governor's emergency proclamations.

*In re Recall of Jay Inslee*, No. 99948-1

The Thurston County Superior Court held a hearing on the sufficiency of the recall charges in June 2021 and determined that all of the recall charges were legally and factually insufficient. Davis timely filed his notice of appeal.[7] In his briefing before this court, Davis expressly abandoned his appeal of the first charge. Accordingly, we address only the second, third, fourth, and fifth charges set out in the recall petition.

## ANALYSIS

It is well recognized that the COVID-19 pandemic is both a public disorder and a disaster affecting life and health. *See Slidewaters LLC v. Dep't of Labor & Indus.*, 4 F.4th 747, 755 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 779 (2022). The charges in the recall petition center on aspects of Governor Inslee's response to the pandemic. In order to be legally and factually sufficient, a charge must show a prima facie case of misfeasance, malfeasance, or violation of the oath of office. Because Davis fails to make this showing, we affirm the trial court's decision and hold that the recall charges are legally and factually insufficient.

---

[7] Two of the recall proponents, Simon Peter Serrano and William Bisson, also timely filed a joint notice of appeal. Serrano later withdrew as counsel for himself and Bisson, and both Serrano and Bisson voluntarily withdrew their appeal. Davis is the only remaining appellant.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

A.     Legal Standard

This court reviews a trial court's determination of the sufficiency of recall charges de novo. *In re Recall of West*, 155 Wn.2d 659, 663, 121 P.3d 1190 (2005). Under Washington law, elected officials may be recalled for malfeasance, misfeasance, or violation of the oath of office. WASH. CONST. art. I, §§ 33-34; RCW 29A.56.110. Misfeasance and malfeasance are "any wrongful conduct that affects, interrupts, or interferes with the performance of official duty." RCW 29A.56.110(1). More specifically, misfeasance is "the performance of a duty in an improper manner" and malfeasance is "the commission of an unlawful act." RCW 29A.56.110(1)(a), (b). Violation of the oath of office is "the neglect or knowing failure … to perform faithfully a duty imposed by law." RCW 29A.56.110(2).

Courts do not evaluate whether the allegations against an elected official are true or false but, rather, stand as gatekeepers to ensure that elected officials are not subject to recall for frivolous reasons. *In re Recall of Cy Sun*, 177 Wn.2d 251, 255, 299 P.3d 651 (2013). To that end, courts must determine whether the recall petitioner has knowledge of the acts complained of and whether the allegations are legally and factually sufficient. *Id.* The burden of establishing that the charges alleged in the recall petition are both legally and factually sufficient falls on the proponent of the recall. *In re Recall of Kelley*, 185 Wn.2d 158, 163, 369 P.3d 494 (2016).

*In re Recall of Jay Inslee*, No. 99948-1

An allegation is factually sufficient if the petition gives "'a detailed description'" of how and when the elected official engaged in unlawful conduct, "'including the approximate date, location, and nature of each act'" that constitutes a prima facie case of misfeasance, malfeasance, or the violation of the oath of office. *Id.* at 163-64 (internal quotation marks omitted) (quoting *In re Recall of Sun*, 177 Wn.2d at 255). An allegation is legally sufficient if the petitioner identifies some substantial conduct of the elected official that would clearly amount to misfeasance, malfeasance, or violation of the oath of office. RCW 29A.56.110. In other words, the petitioner must "identify the 'standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful.'" *In re Recall of Inslee*, 194 Wn.2d 563, 568, 451 P.3d 305 (2019) (internal quotation marks omitted) (quoting *In re Recall of Pepper*, 189 Wn.2d 546, 554-55, 403 P.3d 839 (2017)). If there is a legal justification for the challenged action, the charge is not legally sufficient. *In re Recall of Wasson*, 149 Wn.2d 787, 791-92, 72 P.3d 170 (2003) (citing *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990)). More specifically, recall charges based on discretionary acts are legally sufficient only if the elected official exercised their discretion in a manifestly unreasonable manner, which "may be shown by demonstrating discretion was exercised [on] untenable grounds or for untenable reasons." *In re Recall of Inslee*, 194 Wn.2d at 572.

*In re Recall of Jay Inslee*, No. 99948-1

B.      Charge Two Is Legally and Factually Insufficient

Charge Two of the recall petition alleges that "Governor Inslee violated the separation of powers and usurped both the Judicial and Legislative branches' authority by unilaterally dictating the powers and jurisdiction of the supreme and inferior courts of the State of Washington." CP at 9. Davis argues that "[b]y prohibiting a group of Washington citizens [landlords] from access to courts, Governor Inslee has violated his oath of office, and acted with misfeasance." Appellant Proponent C Davis et al. [Br.] at 19. Because Davis fails to show that Proclamation 20-19 was a manifestly unreasonable exercise of Governor Inslee's discretionary authority and fails to provide facts in support of this charge, we hold Charge Two is legally and factually insufficient.

Washington's governor possesses broad discretionary authority to issue emergency proclamations restricting "activities [the governor] reasonably believes should be prohibited to help preserve and maintain life, health, property or the public peace" during declared emergencies. RCW 43.06.220(1)(h). Governor Inslee issued Proclamation 20-19 pursuant to that discretionary authority. To establish the legal sufficiency of the charge based on Proclamation 20-19, Davis must show that the governor exercised his discretion in a manifestly unreasonable manner. *See In re Recall of Inslee*, 194 Wn.2d at 572. Davis fails to do so.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Davis relies on this court's decision in *Waples v. Yi*, 169 Wn.2d 152, 234 P.3d 187 (2010), to argue that Proclamation 20-19 usurps the judiciary's power to set procedural rules. But Davis's reliance on *Waples* is misplaced. In *Waples*, this court struck down the statute at issue because it conflicted with a particular court rule. 169 Wn.2d at 161. Here, Davis points to no court rule that conflicts with Proclamation 20-19 and therefore provides no basis under *Waples* to find that it conflicts with the power of the courts to set their own procedural rules.

Davis fails to otherwise explain how a temporary limitation on the ability of residential landlords to initiate unlawful detainer proceedings infringes on the power of Washington's judiciary. Courts generally exercise their power only when a legal action is before them. Proclamation 20-19 does not limit what courts may do when an unlawful detainer action is filed but, rather, temporarily limits the filing of particular unlawful detainer actions in the first instance.

Davis does not identify any standard, law, or rule that shows Proclamation 20-19 was a manifestly unreasonable exercise of Governor Inslee's discretionary authority under RCW 43.06.220(1)(h). Furthermore, Davis provides no facts in support of this charge, aside from quoting the language of Proclamation 20-19. The proclamation alone does not constitute a prima facie case of misfeasance, malfeasance, or the violation of the oath of office. As a result, we hold Charge Two is legally and factually insufficient.

*In re Recall of Jay Inslee*, No. 99948-1

C.      Charge Three Is Legally and Factually Insufficient

Charge Three of the recall petition alleges that "Governor Inslee exceeded [the] statutory authority granted in RCW 43.06.220(2)(g) by suspending the Open Public Meetings Act, [thereby] infringing on the People of Washington's right to petition the government for redress and infringing on the People's right to peaceably assemble under the First Amendment of the United States Constitution."  CP at 10. Davis fails to show that temporarily suspending provisions of the Open Public Meetings Act (OPMA) was a manifestly unreasonable exercise of Governor Inslee's authority, and he fails to provide sufficient facts to make out a prima facie case of misfeasance, malfeasance, or violation of the oath of office.  Therefore, we hold Charge Three legally and factually insufficient.

Washington law grants the governor authority to suspend any statutory obligations for the conduct of state business that would impede efforts to address a declared emergency "unless…the waiver or suspension would conflict with the rights, under the First Amendment [to the United States Constitution], of freedom of speech or of the people to peaceably assemble."  RCW 43.06.220(2)(g).  Pursuant to this authority, Governor Inslee issued Proclamation 20-28 to suspend, among other obligations, OPMA's requirement that public meetings be held in person.  To ensure the public retains access to meetings subject to OPMA, this proclamation also requires public agencies provide option(s) for the public to attend the proceedings

11

*In re Recall of Jay Inslee*, No. 99948-1

through, at minimum, telephonic access and provide the means for all persons attending the meeting to hear each other at the same time.

Davis states that Proclamation 20-28 violates RCW 43.06.220(2)(g) because it violates his First Amendment rights to peaceably assemble and petition the government, but his entire argument under this charge focuses on the right to petition the government. RCW 43.06.220(2)(g) does not address the right to petition the government. And while public participation in government decisions is an important part of any democracy, participation by one specific means—such as holding public meetings in person—is not guaranteed by the First Amendment. *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283, 104 S. Ct. 1058, 79 L. Ed. 2d 299 (1984) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.").

In addition, the alternative avenues for public attendance and participation provided by Proclamation 20-28 preserve the core tenets of the OPMA, ensuring that decisions by the governing bodies of public agencies are made in sessions open to the public. While in-person attendance at these meetings is temporarily limited by the proclamation, this limitation is well within the governor's discretionary authority to protect public health and safety during an ongoing pandemic. Because Davis fails to show a manifest unreasonable exercise of Governor Inslee's discretionary

12

*In re Recall of Jay Inslee*, No. 99948-1

authority under RCW 43.06.220(2)(g), we hold that Davis does not meet his burden of proving the legal sufficiency of Charge Three.

Davis also fails to meet his burden of proving the factual sufficiency of Charge Three. Davis relies on the declaration of another recall proponent alleging he attempted several times to attend or speak at local city council meetings and was denied access due to not wearing a facial covering. This recall proponent also asserts he was unable to access meetings virtually due to technological difficulties. While Davis does provide a detailed description of these events, including the approximate date, location, and nature of each act, these facts do not constitute a prima facie case of misfeasance, malfeasance, or violation of the oath of office. Nothing in these facts demonstrates any wrongful conduct, performance of a duty in an improper manner, unlawful act, or neglect or knowing failure to perform a duty on the part of Governor Inslee. Therefore, we hold Charge Three factually insufficient.

D.    Charge Four Is Legally and Factually Insufficient

Charge Four of the recall petition alleges that "Governor Inslee exceeded [the] statutory authority granted in RCW 43.06.220(2)(g) by suspending people's rights to peaceably assemble by limiting the number of people allowed to attend a single gathering under Proclamations 20-05, 20-06, 20-07, 20-11, and subsequent Proclamations." CP at 11. Because Davis fails to show how these proclamations

constitute misfeasance, malfeasance, or violation of the oath of office, we hold Charge Four legally and factually insufficient.

Davis does not explain why the proclamations detailed in Charge Four constitute misfeasance or violate Governor Inslee's oath of office beyond stating that RCW 43.06.220(2)(g)(iii) protects the fundamental rights of freedom of speech and assembly. This does not satisfy Davis's burden to show that the governor exercised his discretion in a manifestly unreasonable manner when he issued these proclamations. *See In re Recall of Inslee*, 194 Wn.2d at 572.

However, even if Davis more fully developed his argument, it would fail under settled First Amendment principles. The challenged proclamations do not conflict with the First Amendment rights of speech and assembly because the proclamations are (1) "'content neutral,'" (2) "'tailored to serve a substantial government interest,'" and (3) "'do not unreasonably limit alternative avenues of expression.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 789, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989) (quoting 848 F.2d 367, 370 (2d Cir. 1988)) (articulating these three criteria for valid time, place, and manner restrictions on speech and assembly).

The proclamations are content neutral because they "serve[] purposes unrelated to the content of expression." *Id.* at 791. The governor adopted the proclamations to combat the COVID-19 pandemic, not to suppress the message or

14

*In re Recall of Jay Inslee*, No. 99948-1

content of particular rallies. The proclamations and the denials of permits do not target any message but, rather, the "harmful secondary effects of public gathering—the spread of a novel virus for which there currently is no cure or effective treatment." *Geller v. de Blasio*, No. 20cv3566 (DLC), 2020 WL 2520711, at *4 (S.D.N.Y. May 18, 2020). While the development of vaccinations and treatment protocols for COVID-19 has assisted in containment and treatment, the vaccine had not yet been developed at the time the proclamations were issued.

The proclamations also "'promote[] a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689, 105 S. Ct. 2897, 86 L. Ed. 2d 536 (1985)). Protecting public health is a substantial and compelling public interest. *Givens v. Newsom*, 459 F. Supp. 3d 1302, 1315 (E.D. Cal. 2020). At the time the challenged proclamations were issued, the physical distancing and masking strategies they implemented were the only known effective way to slow the transmission of COVID-19. The proclamations are narrowly tailored because "the means chosen are not substantially broader than necessary to achieve the government's interest" in slowing the spread of COVID-19. *Ward*, 491 U.S. at 800. While a restriction on public gatherings may not be found to be narrowly tailored in ordinary times, "these times are extraordinary [and] … the scientific and medical

15

communities believe that preventing in-person gathering is crucial to any strategy of containment" of COVID-19. *Geller*, 2020 WL 2520711, at *4.

Finally, the challenged proclamations also did not limit the ability of Washingtonians to use alternative avenues of communication and exercise their free speech rights. *Ward*, 491 U.S. at 802. Assembly can be more than just an in-person gathering. There are meaningful ways for like-minded citizens to coordinate, have conversations, and organize on issues they are passionate about. Virtual meetings, phone calls, and shared electronic documents are only a few alternatives available to meeting in person. These communication avenues have been held to be acceptable alternatives to public group protests when restrictions on public gatherings are in place to contain the spread of COVID-19. *Geller*, 2020 WL 2520711, at *4; *accord Givens*, 459 F. Supp. 3d at 1314. The restrictions on large public gatherings are well within the governor's discretionary emergency powers.

The United States Supreme Court has recognized the authority of state governors to issue proclamations limiting the size of in-person gatherings. *S. Bay United Pentecostal Church v. Newsom*, ___U.S. ___, 140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) (Mem.). The Constitution entrusts the safety and health of the people to the politically accountable officials of the states to guard and protect. *Id.* (Roberts, C.J., concurring). When those officials "'undertake[] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" *Id.*

16

*In re Recall of Jay Inslee*, No. 99948-1

(alteration in original) (quoting *Marshall v. United States*, 414 U.S. 417, 427, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)).  Courts appropriately defer to such decisions.  *Id.* at 1613-14.  Accordingly, we hold Charge Four legally insufficient.

While the inadequacy of Charge Four is already demonstrated because it lacks legal sufficiency, Charge Four is also factually insufficient.  Davis seeks to support this charge with the account of another recall proponent who submitted a series of applications to hold rallies on the Capitol Campus, which were denied based on the challenged proclamations.  The denial of these permits does not demonstrate any wrongful conduct, performance of a duty in an improper manner, unlawful act, or neglect or knowing failure to perform a duty.  Because Davis fails to make a prima facie showing of misfeasance, malfeasance, or violation of office, we hold Charge Four factually insufficient.

E.     Charge Five Is Legally and Factually Insufficient

Charge Five of the recall petition alleges that "the Governor issued all of the Covid-19 pandemic Proclamations without just cause as he failed to make a finding that a 'public disorder, disaster, energy emergency, or riot' existed in the State of Washington due to Covid-19."  CP at 12-13 (quoting RCW 43.06.010(12)).  Because Governor Inslee explicitly found that the COVID-19 pandemic constituted a disaster and the COVID-19 pandemic clearly falls within the definition of disaster we hold Charge Five legally and factually insufficient.

17

*In re Recall of Jay Inslee*, No. 99948-1

Davis argues that the COVID-19 pandemic does not fall within any of the enumerated reasons for which the governor can proclaim a state of emergency under RCW 43.06.010(12): public disorder, disaster, energy emergency, or riot. However, Governor Inslee explicitly stated in his initial proclamation that the worldwide outbreak of COVID-19 constituted a disaster:

> The worldwide outbreak of COVID-19 and the effects of its extreme risk of person-to-person transmission throughout the United States and Washington State significantly impacts the life and health of our people, as well as the economy of Washington State, and *is a public disaster that affects life, health, property or the public peace.*

Proclamation 20-05 at 2 (emphasis added).

This court held in *State v. Smith* that "nontechnical statutory term[s]"— like disaster—"may be given [their] dictionary meaning" and "statutes should be construed to effect their purpose, and unlikely, absurd, or strained consequences should be avoided." 189 Wn.2d 655, 662, 405 P.3d 997 (2017) (plurality opinion). The dictionary definitions of "disaster" support the assertion that the COVID-19 pandemic constitutes a disaster.[8] Indeed, construing the term "disaster" to exclude a worldwide pandemic would be strained and absurd. The Ninth Circuit Court of Appeals reached the same conclusion in dismissing a suit that challenged Governor

---

[8] *See, e.g.*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/disaster ("a sudden calamitous event bringing great damage, loss, or destruction."); CAMBRIDGE ONLINE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/disaster ("[resulting in] great harm, damage, or death, or serious difficulty").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Inslee's emergency proclamations. *See Slidewaters LLC*, 4 F.4th at 755 ("We thus conclude that the governor had the lawful authority under Revised Code of Washington § 43.06.010(12) to issue Proclamation 20-05, as the pandemic is both a 'public disorder' and a 'disaster' affecting 'life [and] health' in Washington." (alteration in original)).

This court has previously rejected narrow definitions of "disaster." In *Cougar Business Owners Association v. State*, we rejected the plaintiffs' definition of "disaster" as "unduly narrow" because it would have excluded the reactivation of a dormant volcano. 97 Wn.2d 466, 475, 647 P.2d 481 (1982), *overruled in part by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). We reasoned that such a narrow definition "is contrary to the legislative intent of the statutes upon which the governor's action were based" because it would have prevented the governor from taking necessary action "to save lives or property." *Id.* So too here, we reject Davis's narrow definition of disaster as excluding a global pandemic.

In *Cougar Business Owners Association*, we also held that "[t]he proclamation of an emergency and the Governor's issuance of executive orders" to address that emergency "are by statute committed to the sole discretion of the Governor." *Id.* at 476. Because the declaration of an emergency is a discretionary act, Davis must show Governor Inslee's exercise of discretion was manifestly unreasonable in order to establish the legally sufficiency of Charge Five. *See In re*

19

*In re Recall of Jay Inslee*, No. 99948-1

*Recall of Inslee*, 194 Wn.2d at 572. Davis fails to do so. Davis also does not articulate any relevant facts in support of this charge. As a result, we hold Charge Five is legally and factually insufficient.

CONCLUSION

The COVID-19 pandemic is a disaster unlike any the citizens of Washington have seen before. Governor Inslee has used his discretion to navigate this pandemic, making difficult decisions in an effort to balance the health and safety of Washingtonians with their individual liberties. While reasonable minds may disagree with the governor's discretionary decisions, such disagreement is insufficient to support a recall. *Cole v. Webster*, 103 Wn.2d 280, 286, 692 P.2d 799 (1984) (allegations based on political disagreement do not support a recall petition). We hold the charges are legally and factually insufficient and affirm the superior court order dismissing the recall petition.

20

*In re Recall of Jay Inslee*, No. 99948-1

Stephens, J.

WE CONCUR:

Gonzáles, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Whitener, J.

Owens, J.